**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. RDB-19-0032** |
| **ERWIN BOATENG,** | |
| **Defendant** | |

**RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE AND RELEASE**
**PENDING APPEAL**

The United States of America, by and through its undersigned counsel, hereby moves this honorable Court to deny the motions docketed at ECF 317, 318, 328, 331, 332, and 337 filed by the defendant, Erwin Boateng ("defendant"), *pro se*. As grounds for this motion to dismiss, the government states as follows:

**FACTUAL BACKGROUND**

The defendant was an active member of a criminal conspiracy to fraudulently open bank accounts in the names of multiple victims, transfer funds from corresponding accounts, and immediately withdraw the funds as soon as they were available. For his role in the conspiracy, he was indicted by a federal grand jury on January 23, 2019, on counts of Conspiracy to Commit Bank Fraud, 18 U.S.C. § 1349 (Count One), Bank Fraud, 18 U.S.C. § 1344 (Counts Nine and Eleven), and Aggravated Identity Theft (Count Twelve), 18 U.S.C. §§ 1028A(a)(1), (c)(5). ECF 1.

On September 19, 2019, the defendant appeared before the Honorable George L. Russell and entered a plea of guilty to Count One of the Indictment. ECF 99. The sentencing hearing was

1

initially set for December 20, 2019, but continued several times at the request of the parties. ECF 103.

On December 17, 2022, the defendant appeared before the Court for a hearing concerning a violation of the plea agreement and sentencing. ECF 302. The Court determined that the defendant had violated the plea agreement by continuing to engage in criminal conduct after entering his plea. *Id*. In the subsequent sentencing hearing, the defendant was sentenced to forty-two months of imprisonment, three years of supervised release, and ordered to forfeit $27,758.79. ECF 303. The defendant filed a notice of appeal on December 29, 2021. ECF 310.

Following the defendant's imprisonment, he filed a series of *pro se* motions requesting release. On February 1, 2022, the defendant filed a Motion for Release on Public Health Emergency and Other Grounds. ECF 317. On February 2, 2022, the defendant filed a Motion for Compassionate Release, which appears to be the exact motion filed at ECF 317, though it was formatted as a single-spaced document. ECF 318. On April 1, 2022, the defendant filed a Motion for Release Pending Appeal. ECF 328. On June 13, 2022, the defendant filed an Emergency Motion to Expedite 3143 (Release Pending Appeal). ECF 331. On June 23, 2022, the defendant again, filed what appears to be the exact motion docketed at ECF 331 in substance, though it is unsigned and appears to be written in a different font. ECF 332. Finally, the defendant filed a supplement to the motion docketed at ECF 318. ECF 337.

On August 10, 2022, appellate counsel for the defendant filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). *See* USCA4 Appeal No. 21-4719 ECF 37. The government filed a Motion to Dismiss the Appeal. *See* USCA4 Appeal No. 21-4719 ECF 46. Appellate counsel responded to the government's motion at USCA4 Appeal No. 21-4719 ECF 47. Upon the filing of the brief by appellate counsel, the defendant, *pro se*, filed a Withdrawal of Appeal, which was

2

docketed on August 30, 2022. *See* USCA4 Appeal No. 21-4719 ECF 48. The appellate motions have yet to be ruled upon.

Regarding the compassionate release motions, the defendant has not exhausted administrative remedies, thereby inhibiting the Court from adjudicating his request. *United States v. Johnson*, RDB-14-441 (D. Md. Apr. 3, 2020); *United States v. Underwood*, TDC-18-201, at 3 (D. Md. Apr. 10, 2020). Even if the Court had authority to rule on the motion, the defendant has not demonstrated extraordinary and compelling reasons that would make him eligible for a sentencing reduction under the relevant guidelines policy statement.

Concerning the requests for release pending appeal, the defendant has voluntarily withdrawn his appeal, and is thus no longer entitled to release on these grounds.

Accordingly, the Court should deny each of the defendant's motions.

## <u>LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE</u>

The federal sentencing statute provides that an inmate cannot move for compassionate release until he has exhausted administrative remedies with the Federal Bureau of Prisons ("BOP") or by showing that the BOP failed to respond to his request within 30 days.[1] Because Congress codified the exhaustion requirement, the Court can only dispense with this requirement if the inmate demonstrates that the administrative remedy is unavailable—in other words, that that the administrative process is a dead end. Absent exhaustion or a showing of genuine unavailability, the Court does not have authority to adjudicate an inmate's motion for compassionate release.

Once the inmate exhausts administrative remedies and confers authority on the Court to rule on his motion, the Court can only reduce the inmate's sentence upon a showing of

---

[1] For the purpose of this opposition, the government uses the term "exhaustion" to include the scenario where the BOP does not respond within 30 days of the inmate's request for compassionate release.

"extraordinary and compelling reasons" warranting the reduction, that the inmate is no longer a danger to the community, and that the reduction would be consistent with the relevant Sentencing Commission policy statement and Section 3553(a) factors. The following sections explain this legal framework in detail.

## I.      *Court's authority to adjudicate motions for compassionate release*

Under 18 U.S.C. § 3582(b), the district court has limited authority to modify a final sentence. *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010); *Dillon v. United States*, 560 U.S. 817, 824-25 (2010) (noting that under Section 3582, the Court generally "may not modify a term of imprisonment once it has been imposed"); *United States v. Bro*wn, RDB-16-553, at 2 (D. Md. Mar. 26, 2020) (holding that the Court "may not modify the sentence imposed . . . unless certain limited circumstances arise or as permitted under Rule 35 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3582(c)").

As amended by the First Step Act, Section 3582(c)(1) permits the Court to reduce the inmate's term of imprisonment provided that the inmate has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or the inmate shows "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."[2] 18 U.S.C. § 3582(c)(1)(A); *United States v. Nance*, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020).

Since the "outbreak of COVID-19, federal courts have overwhelmingly "maintained that exhaustion remains mandatory before a court may entertain a compassionate release request."

---

[2] Rule 35 gives the Court authority to modify a sentence to correct a clerical error or to reflect the inmate's cooperation with the government. Section 3852(c)(2) gives the Court authority to modify an inmate's sentence in response to a reduction in the relevant sentencing guidelines. Neither Rule 35 nor Section 3582(c)(2) is at issue in this case.

4

*United States v. Robert Mattingly*, NKM-15-5, at 6 (W.D. Va. Apr. 1, 2020) (citing *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Zywotko*, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Garza*, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020)); *United States v. Clark*, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020); *Johnson*, RDB-14-441, at 1; *United States v. Price*, GJH-15-393, at 3-4 (D. Md. Apr. 7, 2020); *United States v. Raia*, No. 20-1033, at 7 (3d Cir. 2020) (failing to exhaust administrative remedies under Section 3582 "presents a glaring roadblock foreclosing compassionate release").

Absent exhaustion, the Court "does not have authority to grant the requested relief." *United States v. Shah*, CJC-10-70, at 3 (C.D. Cal. Mar. 30, 2020) ("Because defendant failed to exhaust his administrative remedies, his request for compassionate release based on COVID-19 concerns fails."); *Underwood*, TDC-18-201, at 3 (in the context of COVID-19, finding "no basis" to waive the statutory exhaustion requirement codified in Section 3582); *United States v. Gileno*, 2020 WL 1307108, at *3-4 (D. Conn. Mar. 19, 2020) (denying compassionate release motion based on COVID-19 for lack of exhaustion); *United States v. Sloane*, IT-19-10117, at 2 (D. Mass. Mar. 19, 2020); *United States v. Neman*, JAK-14-521, at 4-6 (C.D. Cal. Mar. 30, 2020).

## II.     *The unavailability exception to the exhaustion requirement*

As the sentencing statute and case law make clear, Congress expressly required exhaustion of administrative remedies in the compassionate release context. The Court can only dispense with this requirement if the inmate shows that the administrative remedy is genuinely unavailable and that the administrative process "operates as a simple dead end." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016); *Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (in the context of a compassionate release motion based on COVID-19, rejecting defendant's argument that "the exhaustion requirement should be deemed satisfied or entirely dispensed with due to the BOP's

failure to address the dangers of the pandemic, or that the 30-day lapse requirement should be waived as futile in light of the pressing public health concerns").[3]

The inmate's mere dissatisfaction with the administrative process does not equate with unavailability. *Mattice v. Bell*, GLR-19-1524, at 8 (D. Md. Mar. 20, 2020) ("Mattice's dissatisfaction with BOP policy does not demonstrate the administrative process amounts to a dead end as contemplated under *Ross*. Accordingly, Mattice's failure to exhaust administrative remedies requires dismissal" of his petition under the Prison Litigation Reform Act) (international quotations omitted).[4]

Unless the inmate can show that he exhausted administrative remedies or that such remedies are unavailable, the Court cannot adjudicate the inmate's compassionate release motion. *Ross*, 136 S. Ct. at 1857 (holding that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"); *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) ("Where Congress specifically mandates it, exhaustion is not merely appropriate but required.") (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

### III.   *Grounds for compassionate release*

---

[3] In *Ross*, the Court held that an administrative remedy can also be unavailable when the administrative process is too opaque to navigate or when government officials thwart the petitioner's use of the administrative process. *Id.* at 1859-60. Neither form of unavailability is relevant in this case, as the process for requesting compassionate release is simple and there's no evidence that the BOP is thwarting attempts to participate in that process.

[4] *Ross* involved a petition under the Prison Legal Reform Act ("PLRA"). While the PLRA refers to "available remedies," Section 3582 does not. For that reason, some courts have questioned whether the unavailability exception articulated in *Ross* even applies to motions for compassionate release. *Underwood*, TDC-18-201, at 4 ("Unlike the PLRA, the compassionate release exhaustion requirement does not even limit its reach to exhaustion of 'available' administrative remedies, such that it is not clear that even the types of exceptions found in *Ross* to be available under the PLRA would apply here."); *Johnson*, RDB-14-441, at 10 (citing *United States v. Williams*, 2020 WL 1506222 (D. Md. Mar. 3, 2020)).

Once the inmate satisfies the statute's exhaustion requirement, the Court may reduce the inmate's sentence, but only if it finds that the inmate is eligible for compassionate release—that there are "extraordinary and compelling reasons warrant such a reduction," and that the inmate is no longer a danger to the community. 18 U.S.C. § 3582(c)(1)(A); *Dillon*, 560 U.S. at 826-27 (holding that Section 3582(c) permits a sentencing reduction only when that reduction would be "consistent with applicable policy statements issued by the Sentencing Commission") (citing U.S.S.G. § 1B1.10 (policy statement for Section 3582(c)(2) sentencing reductions)).

Application Note 1 to Section 1B1.13—the relevant Sentencing Commission policy statement—defines the "extraordinary and compelling reasons" that make an inmate eligible for compassionate release. 28 U.S.C. § 994(t) (providing that the Sentencing Commission's policy statement describes "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Dillon*, 560 U.S. at 826-27 (holding that the Sentencing Commission's policy statement is binding on the Court). Relevant to this case, those reasons include:

- a terminal illness,

- a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or

- a "defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

U.S.S.G. § 1B1.13 cmt. n.1 (other grounds omitted).[5] Once the Court determines that the inmate is eligible for a sentencing reduction, the Court considers the Section 3553(a) factors and

---

[5] Rehabilitation "of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.*, cmt. n.3.

determines whether to exercise its discretion to reduce the inmate's sentence. *Dillon,* 560 U.S. at 827.

The burden is on the inmate to demonstrate that he has exhausted administrative remedies and that there are extraordinary and compelling reasons to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that an inmate, "as the § 3582(c)(2) movant, bears the burden of establishing" eligibility). Even for those inmates who are statutorily eligible for a reduced sentence, compassionate release is a "rare" and "extraordinary" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (holding that "a compassionate release . . . is an extraordinary and rare event."); *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).[6]

### BOP Response to COVID-19

The BOP has taken aggressive action to mitigate the danger of COVID-19. In early 2020, the agency established a COVID-19 working group to develop responsive procedures in consultation with experts from the Centers for Disease Control ("CDC"). On March 13, 2010, the agency implemented the COVID 19 Phase Two Action Plan ("action plan") in order to minimize the risk of COVID-19 transmission into its facilities. The action plan comprises several preventive and mitigation measures, including the following:

---

[6] To the extent an inmate simply asks the Court to modify the location of his sentence, that determination lies solely with the BOP. 18 U.S.C. §§ 3621(b) and 3624(c) (precluding judicial review of BOP placement decisions); *Reeb v. Thomas*, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (courts lack jurisdiction to review BOP's placement decisions under Sections 3622 through 3624); *Eberhart*, 2020 WL 1450745, at *6 (holding that the "court has no authority to designate the place of confinement"); *United States v. Grass*, 561 F. Supp. 2d 535, 537 (E.D. Pa. 2008); *Washington*, 2019 WL 6255786, at *3.

**Screening of Inmates and Staff:** All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined, and symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. Staff registering a temperature of 100.4 degrees or higher will be barred from the facility on that basis alone.

**Contractor Access:** Contractor access to BOP facilities is restricted to only those performing essential services (including medical or mental health care) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization from the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

**Quarantine Logistics:** The action plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the screening protocol.

**Suspension of Social Visits and Tours:** BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the action plan is in effect.

**Suspension of Legal Visits:** BOP has placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

**Suspension of Inmate Movements:** BOP has also ceased the movement of inmates and detainees among its facilities for at least the first 30 days that the action plan is in effect. Though there will be exceptions for medical treatment and other exigencies, this will prevent transmissions between institutional populations. Likewise, all official staff travel has been cancelled, as has most staff training.

**Modified Operations:** Finally, the action plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.[7]

The measures enumerated in the action plan are designed to sharply mitigate the risk of

COVID-19 transmission into BOP facilities. As communicated to the government, BOP

---

[7] Further details are available at www.bop.gov/resources/news/20200313_covid-19.jsp, and at the regularly updated resource page, www.bop.gov/coronavirus/index.jsp.

professionals will continue to monitor the path of the virus and adjust its practices as necessary to maintain the safety of BOP inmates. *Raia*, No. 20-1033, at 8 (Third Circuit taking note of the "BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread").

## **LEGAL FRAMEWORK FOR RELEASE PENDING APPEAL**

Pursuant to 18 U.S.C. § 3143(b) the presumption is that the Court *shall* detain a defendant when, during the pendency of an appeal, they have been convicted and sentenced to a term of imprisonment. The Court may only release an imprisoned defendant when they have made finding that the person is not a danger of flight or to the community, and the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprison that would be less than the time already served. *Id*. The statute does not apply to matters no longer pending appeal.

## **ARGUMENT**

The defendant has failed to exhaust administrative remedies. He has not made any request to the BOP regarding a request for early release or to be released to home confinement. As the Court observed in *Ross*,

> Judge-made exhaustion doctrines . . . remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes.

*Id.*, 136 S. Ct. at 1857. The holding of *Ross* and opinions that follow are clear. The defendant did not comply with the statute's exhaustion requirement, and for that reason, deprived this Court of authority to adjudicate his request for compassionate release. *Shaw v. Bank of America Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) (holding that "statutorily-provided exhaustion requirements deprive the court of jurisdiction").

The BOP conducts extensive assessments of requests for compassionate release. 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release & Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g). As the BOP's procedures reflect, the agency comprehensively reviews inmate requests for compassionate release, drawing on the agency's knowledge of the inmate and the conditions of confinement. In line with Congress's statutory imperative, the BOP is better positioned to handle requests for compassionate release in the first instance. *Cf. McKart v. United States*, 395 U.S. 185, 193-95 (1969) (observing that "since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise").

Further, the legislature, Department of Justice, and BOP have evidenced their commitment to protecting inmates in light of COVID-19. For instance, in response to the COVID-19 outbreak, Congress expanded the BOP's statutory authority to reduce sentences to home confinement. Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2) (Mar. 27, 2020) (allowing the BOP to "lengthen the maximum amount of time the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2)). Continuing this trend, the Attorney General ordered the BOP to broadly exercise its authority to reduce sentences to home confinement and protect inmates in BOP custody, taking into consideration inmates' ages, vulnerabilities to COVID-19, and other relevant factors. Attorney General, Mem. for Dir. of BOP, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020).

In other words, by policy, regulation, statute, and order from the Attorney General, the BOP is taking seriously the need to protect inmates from this virus. And even if the defendant is dissatisfied with the process, he has not demonstrated that making the request to the agency is so

futile as to render the process genuinely unavailable. *Mattice*, GLR-19-1524, at 8 (rejecting unavailability argument in PLRA context); *Washington*, 2019 WL 6255786, at *3 ("Washington's presumptions that the BOP's implementation of the First Step Act will not adequately protect his statutory right to goodtime credits are entirely conclusory, and are insufficient to bypass the exhaustion requirement."); *cf. Johnson*, RDB-14-441, at 1 (denying COVID-19 motion for compassionate release because the "statute does not provide any exceptions to these exhaustion requirements, and this Court may not create one").

Even if the Court were to adjudicate the defendant's request, the defendant has not met his burden of showing extraordinary and compelling circumstances under Section 1B1.13 that would make him eligible for relief. The defendant is not terminally ill. He is not suffering from a serious medical condition from which he's not expected to recover. The defendant is not rapidly deteriorating in physical or mental health. In fact, he asserts no medical or health conditions that would make him particularly susceptible to COVID-19. The effects of COVID-19 on the defendant, if he were to contract it, are still unknown. Additionally, as previously mentioned, the BOP is taking serious measures to prevent the spread of COVID-19 within its facilities. The defendant is simply not eligible for compassionate release under Section 1B1.13. *United States v. Goode*, 2020 WL 58272, at *6 (S.D.N.Y. Jan. 6, 2020) (denying compassionate release motion because defendant failed to show that her "end stage kidney disease" had an "end of life trajectory" and otherwise met the criteria for compassionate release based on her medical condition); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (concluding that defendant had failed to demonstrate "a foundation for compassionate release based on his medical condition" because his medical provider did not indicate that defendant's medical conditions were either terminal or resulted in an inability "to provide self-care within the correctional facility").

Finally, the defendant incorporates the substance of his compassionate release motion docketed at ECF 317 into the motion at ECF 337, but there is one factor of particular significance that is different than when he initially filed his first motion. He is housed in a new location. He was initially housed at the Chesapeake Detention Facility located in Baltimore, Maryland, awaiting transfer to a permanent detention facility at the time of his first filing. As of at least April of 2022, he has been housed at FCI Cumberland, located in Cumberland, Maryland. The defendant referenced sharing a cell with twenty-four inmates, and interacting with 160 members of the staff of the prior facility, but the supplement makes no reference to the conditions or efforts made to combat the spread of COVID-19 at the new facility.

With regard to the motions filed seeking release pending appeal, the defendant has rendered them moot by virtue of his withdrawal.

## Conclusion

The defendant's arguments fail on every front. His failure to exhaust administrative remedies, his failure to demonstrate that he's eligible for early release under the Sentencing Commission's policy statement, his failure to demonstrate that a reduction is warranted under the Section 3553(a) factors, and the withdrawal of his appeal all provide the Court reasons to deny each motion.

Respectfully submitted.

Erek L. Barron
United States Attorney

_____/s/_____
Michael F. Aubin
Assistant United States Attorney